NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MONTSE C. TEREPOCKI, *Petitioner/Appellee,*

*v.*

KELLY JO GRIM-MOORE, *Respondent/Appellant.*

No. 1 CA-CV 18-0050 FC
FILED 11-15-2018

Appeal from the Superior Court in Maricopa County
No. FN2017-005833
The Honorable Bernard C. Owens, Judge *Pro Tempore*

**AFFIRMED**

APPEARANCES

Montse C. Terepocki, Peoria
*Petitioner/Appellee*

Kelly Jo Grim-Moore, Phoenix
*Respondent/Appellant*

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the Court, in which
Presiding Judge Diane M. Johnsen and Judge Maria Elena Cruz joined.

**H O W E**, Judge:

¶1 Kelly Grim-Moore appeals from the trial court's order of protection in favor of Montse Terepocki and the subsequent denial of her motion for a new trial. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 In October 2015, Moore's daughter, Terepocki, obtained an ex parte protective order against Moore based on allegations that Moore had committed several acts of harassment against her. Terepocki alleged that Moore had caused a "massive scene before and after church" that "escalated to her physically grabbing [Terepocki;]" vandalized her bathroom at her grandfather's home by writing on the mirrors, signs, and walls; and sent her a book even though Terepocki "clearly told her that [she] wanted to be left alone by her multiple times." After an evidentiary hearing, the trial court dismissed that order of protection.

¶3 In September 2017, Terepocki sought and was granted an order of protection against Moore. In her petition, she referred to the incidents she had alleged in 2015, along with several other incidents that were more than a year old. At the subsequent evidentiary hearing, the court stated at the outset that it would not consider any incidents that occurred more than a year before filing of the current petition because Terepocki had failed to establish good cause for the court to do so.

¶4 The trial court heard testimony from Terepocki, Moore, and one other witness. The court also received exhibits, including Terepocki's text messages to Moore requesting that Moore never contact her directly but only through her husband and only about important family matters.

¶5 Terepocki testified about three separate incidents that occurred in or around her workplace. She stated that these incidents occurred after she told her mother "countless times to leave [her] alone" and to contact her only through her husband. The first alleged incident occurred in the parking lot of the bank where Terepocki worked. According to Terepocki, Moore followed her around the parking lot and attempted to give her a Christmas present even though she repeatedly asked Moore to leave. The next alleged incident occurred in Terepocki's workplace while she was out of town. According to Terepocki, during a visit to the bank, Moore "asked about [her]" and placed a signed "sticky note" on her computer. After receiving the note, Terepocki told her mother by text message "not to come to [her] place of work" and told her again to contact

her only through her husband. As for the third alleged incident, Terepocki testified Moore again showed up at her workplace, "announced 'love you pretty girl'" as she walked by Terepocki, and then quickly exited the building. On redirect examination, the court asked Terepocki to explain why the acts Terepocki described disturbed her. Without objection, Terepocki responded by relating the incidents that underlay her October 2015 petition.

¶6        Moore testified that during the parking lot incident, she was trying to give Terepocki medical records that contained "life-threatening medical information," along with a Christmas gift. She also added that she left immediately upon Terepocki's request. Moore further testified that during the second and third incidents Terepocki described, she had come to the bank to conduct business. She elaborated that she chose the particular branch on the day of the third incident because she had just left her attorney's office, which was located "right across the street[.]"

¶7        Terepocki's sister-in-law also testified at the hearing. According to her testimony, Terepocki had indicated to her that she had been "thinking about reconciling with [her] mom" and had said through social media that she had contemplated reconciling with Moore at one point.

¶8        In urging the trial court to sustain the protective order, Terepocki stated that her mother's conduct annoyed her "so much so to where it distracts [her] . . . from being able to do [her] job[.]" The court subsequently found that, based on the 2015 incidents, Terepocki had a reasonable basis for requesting that her mother not contact her. The court further noted that Moore was aware of her daughter's request to not contact her directly. The court therefore determined that Moore's leaving a "sticky note" on Terepocki's office computer and stating "love you pretty girl" as she passed by Terepocki during a visit to her workplace constituted harassment. As such, the court sustained the order of protection.

¶9        Moore moved for a new trial, arguing that the trial court should not have considered the 2015 incidents. The trial court denied the motion and noted that it heard that evidence "solely to give context to [Terepocki's] decision to limit contact with her mother." Moore timely appealed.

## DISCUSSION

### 1. Evidentiary Issues

¶10    Moore argues that the trial court erred by ruling that her conduct during the second and third incidents constituted harassment and by relying on the 2015 incidents in making its decision. We review the issuance of an order of protection for an abuse of discretion. *Savord v. Morton*, 235 Ariz. 256, 259 ¶ 10 (App. 2014). A trial court abuses its discretion when the record, viewed in the light most favorable to upholding the trial court's decision, is devoid of competent evidence supporting the decision. *Id.*

¶11    A court shall issue an order of protection if it has reasonable cause to believe that "the defendant may commit an act of domestic violence" or "has committed an act of domestic violence within the past year or within a longer period of time if the court finds that good cause exists to consider a longer period." A.R.S. § 13–3602(E). "Domestic violence" encompasses harassment when the victim and defendant are related by blood. A.R.S. § 13–3601(A)(4). In pertinent part, a person commits harassment under A.R.S. § 13–2921(A) if, with the intent to harass or with knowledge that the person is harassing another person, the person engages in any of the following conduct:

> 1. Anonymously or otherwise contacts, communicates or causes a communication with another person by verbal, electronic, mechanical, telegraphic, telephonic or written means in a manner that harasses.
>
> . . .
>
> 3. Repeatedly commits an act or acts that harass another person.

Section 13–2921(E) further defines "harassment" as "conduct that is directed at a specific person and that would cause a reasonable person to be seriously alarmed, annoyed, or harassed and the conduct in fact seriously alarms, annoys or harasses the person."

¶12    The trial court did not abuse its discretion because the evidence supports a finding of harassment under A.R.S. § 13–2921. The record demonstrates that the 2015 incidents strained Terepocki's

4

relationship with her mother so much that Terepocki instructed Moore to cease contacting her directly. The record also indicates that despite Moore's knowledge of that request, Moore directed conduct at Terepocki when she left a note on Terepocki's work computer and, on a separate visit to her workplace, said "love you pretty girl" as she walked nearby. In addition, Terepocki stated that these communications had annoyed her and distracted her attention at work.  As such, competent evidence supports a finding that a reasonable person would be seriously annoyed, alarmed, or harassed by Moore's seemingly innocuous conduct and that Terepocki was in fact, seriously annoyed, alarmed, or harassed.

**¶13**         Moore argues nonetheless that she neither intended to harass Terepocki nor knew that her conduct would harass her. The record, however, supports the trial court's contrary conclusion. According to the record, Terepocki testified that she instructed her mother several times to communicate with her only regarding urgent matters and to do so exclusively through her husband. As such, the trial court could infer that Moore was aware of the effect that her conduct would have on Terepocki. Furthermore, although Moore disputed that she intended to harass Terepocki, the trial court was free to accept Terepocki's evidence to the contrary. *See Vincent v. Nelson*, 238 Ariz. 150, 155 ¶ 18 (App. 2015) (noting that the trial court is in the best position to judge credibility and resolve conflicting evidence and that the appellate court generally defers to its findings). Thus, Moore's argument fails.

**¶14**         Moore next claims that the evidence is insufficient to satisfy A.R.S. § 13–2921(A)(3), which states that a person commits harassment if the person "[r]epeatedly commits an act or acts that harass another person." However, as pertinent here, harassment also occurs when a person "contacts, communicates or causes a communication with another person by verbal, electronic, mechanical, telegraphic, telephonic or written means in a manner that harasses." A.R.S. § 13–2921(A)(1). Because the evidence supports a finding of harassment under that provision, we will not address Moore's argument regarding the third statutory definition.

**¶15**         Moore also contends that the trial court abused its discretion by basing its decision on evidence that it had stated it would not consider. Moore has waived this argument, however, because Moore did not object to Terepocki's testimony regarding the 2015 incidents. *See Ritchie v. Krasner*, 221 Ariz. 288, 303 ¶ 51 (App. 2009) (noting that counsel's failure to object to an argument at trial generally waives the issue on appeal).

### 2. Constitutional Issues

**¶16**　　　　Moore argues that the trial court violated her due process rights by denying her "a meaningful opportunity to be heard[.]" Moreover, she claims that because she relied on the trial court's statement at the beginning of the evidentiary hearing that it would not consider Terepocki's 2015 allegations, Moore did not present testimony rebutting those allegations or cross-examine Terepocki regarding the incidents. We review constitutional and purely legal issues de novo. *State v. Moore*, 222 Ariz. 1, 12 ¶ 51 (2009).

**¶17**　　　　Here, the record shows that, contrary to her argument on appeal, Moore's counsel in fact cross-examined Terepocki after she testified about the 2015 incidents. Further, Moore knew by the time that Terepocki rested her case that the court had allowed Terepocki to testify about the 2015 events to explain why the later events disturbed her. Moore therefore had the opportunity during her own case to offer her own account of those incidents. As such, the record reflects that the court provided Moore a reasonable opportunity to respond to Terepocki's allegations.

### 3. Attorneys' Fees

**¶18**　　　　Moore requests attorneys' fees on appeal under A.R.S. § 13–3602(P). We deny her request, however, because she is not the prevailing party on appeal.

### CONCLUSION

**¶19**　　　　For the foregoing reasons, we affirm. We award Terepocki her costs on appeal, contingent on her compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:　AA